FILED

2023 Jan-25  PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DANIEL REYNOLDS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:21-cv-01567-ACA** |
| | } | |
| **COMMISSIONER,** | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

Plaintiff Daniel Reynolds appeals the decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Mr. Reynolds applied for a period of disability and disability insurance benefits, alleging disability beginning February 1, 2019. (R. at 200–01). The Commissioner denied Mr. Reynolds's claim and his motion for reconsideration. (*Id.* at 111–16, 123–27). Mr. Reynolds then requested a hearing before an Administrative Law Judge ("ALJ") (*Id.* at 128). After holding a hearing (*id.* at 42–81), an ALJ issued an unfavorable decision (r. at 26–37). The Appeals Council

denied Mr. Reynolds's request for review (*id.* at 1–4), making the Commissioner's decision final and ripe for judicial review, *see* 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ

does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Reynolds had not engaged in substantial gainful activity since his alleged onset date. (R. at 28). The ALJ found that Mr. Reynolds's post-traumatic stress disorder and depression were severe impairments, but that his sleep apnea, hemorrhoids, and substance abuse were non-severe impairments. (*Id.* at 28–31). The ALJ also found that although Mr. Reynolds claimed he suffered from back pain due to a bulging disc, his alleged back impairment was not medically determinable. (*Id.* at 31). The ALJ then concluded that Mr. Reynolds does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 31–33).

After considering the evidence of record, the ALJ determined that Mr. Reynolds had

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out instructions and procedures requiring initial learning periods of usually 30 days or less; he can maintain attention and concentration for 2-hour periods at a time; he can perform jobs that do not have a fast paced production requirement; he can perform jobs that do not require interaction with the general public as part of the job duties or working in tandem with coworkers; the claimant can adapt to routine and infrequent work changes; he should avoid concentrated exposure to very loud noise; and he may miss one day of work per month.

(R. at 33). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Mr. Reynolds could not perform his past relevant work. (*Id.* at 35–36). But the ALJ found that other jobs exist in significant numbers in the national economy that Mr. Reynolds could perform, including commercial cleaner, laundry worker II, and automobile detailer. (*Id.* at 36–37). Accordingly, the ALJ found that Mr. Reynolds was not disabled, as that term is defined in the Social Security Act, from February 1, 2019 through the date of the decision on March 24, 2021. (*Id.* at 37).

## IV.   DISCUSSION

Mr. Reynolds argues that the court should reverse the Commissioner's decision because: (1) the ALJ erred in her consideration of the medical opinion evidence; (2) the ALJ erred by not inquiring about whether missing work one day a month would preclude employment during a probationary period; (3) the ALJ's hypothetical question was flawed; (4) the Appeals Council erroneously failed to consider new evidence; and (5) the ALJ did not properly evaluate Mr. Reynolds's subjective pain testimony. (Doc. 9 at 2–16). The court considers each issue in turn.

### 1.   Opinion Evidence

Mr. Reynolds's first argument is that the ALJ did not properly evaluate the opinions of Dr. Leslie Rodrigues or Dr. Robert Estock. (Doc. 9 at 2–9).

Under applicable regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.*

§ 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how she considered those factors. *Id.* § 404.1520c(b)(2). The ALJ may, but is not required to, explain how she considered the other factors. *Id.*

In 2020, Dr. Rodrigues and Dr. Estock each reviewed the evidence in the record and conducted a mental residual functional capacity assessment of Mr. Reynolds. (R. at 90–94, 104–08). Their evaluations are identical in all relevant respects. (*Id.*). Dr. Rodrigues and Dr. Estock opined that Mr. Reynolds had moderate limitations in the areas of understanding and memory; concentration, persistence, and pace; social interactions; and adaptation. (*Id.*). Both doctors also explained that Mr. Reynolds "would benefit from a flexible schedule and would be expected to miss 1 to 2 days of work per month due to cognitive fatigue." (*Id.* at 93, 107).

The ALJ found Dr. Rodrigues's and Dr. Estock's opinions "partially persuasive." (R. at 35). The ALJ explained that their opinions that Mr. Reynolds had "no greater than moderate psychological limitations are consistent with treatment records showing that his symptoms have stabilized with treatment, that he has intact memory, and intact concentration" and those opinions are "generally supported by [Mr. Reynolds's] reports that he can handle his finances." (*Id.*).

6

But the ALJ found that Dr. Rodrigues's and Dr. Estock's opinions that Mr. Reynolds "would miss 1 to 2 days of work per month due to 'cognitive fatigue' are generally not supported by the record." (*Id.*). As support for this finding, the ALJ explained that although Mr. Reynolds was hospitalized in April 2020, there was no record of subsequent hospitalization, and his symptoms had generally stabilized. (*Id.*; *see also* r. at 352–54, 365, 370, 463, 482, 503, 511–12, 612). The ALJ also noted that Dr. Rodrigues and Dr. Estock cited "cognitive fatigue" as the basis for their opinion that Mr. Reynolds would miss one to two days of work per month but that Mr. Reynolds's "cognitive examinations were largely normal," and he reported being "able to handle his finances." (R. at 35; *see also* r. at 257, 309, 318, 377, 504). In addition, the ALJ noted that Mr. Reynolds had worked semiskilled and skilled jobs for significant periods of time while complaining of emotional breakdowns. (R. at 35; *see also* r. at 53–59, 73–75, 246). Despite finding Dr. Rodrigues's and Dr. Estock's opinions that Mr. Reynolds would miss one to two days of work per month generally unsupported by the record, the ALJ included one absence per month in Mr. Reynolds's residual functional capacity and noted that the vocational expert testified that level of absenteeism would not preclude performance of the jobs she identified. (*Id.*)

Mr. Reynolds argues that the ALJ impermissibly substituted her opinion for that of Dr. Rodrigues and Dr. Estock because Dr. Rodrigues and Dr. Estock based

their opinions on record evidence, but the ALJ did not base her rejection of the opinion on any medical evidence. (Doc. 9 at 5). Contrary to Mr. Reynolds's argument, the ALJ did base her rejection of Dr. Rodrigues's and Dr. Estock's opinions on medical evidence that she found did not support the conclusion that cognitive fatigue would cause Mr. Reynolds to miss one to two days of work per month. (*Id.* at 35; *see also id.* at 29–39). Thus, the ALJ did not substitute her lay opinion for that of the reviewing physicians.

Mr. Reynolds also argues that other evidence in the record supports and is consistent with Dr. Rodrigues's and Dr. Estock's opinions and that the ALJ impermissibly placed undue significance on: (1) the fact that he had not required psychiatric hospitalization since the spring of 2020, (2) Mr. Reynolds's ability to engage in some activities of daily living, and (3) his past work at a skilled and semiskilled level despite complaints of emotional breakdowns. (Doc. 9 at 6–8). This argument asks the court to impermissibly "decide the facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation marks and alteration omitted); *see also Crawford*, 363 F.3d at 1158–59 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (quotation marks omitted).  Accordingly, the court will not

disturb the ALJ's articulated findings concerning Dr. Rodrigues's and Dr. Estock's opinions.

### 2.    Duty to Inquire About Probationary Period

Second, Mr. Reynolds contends that the ALJ erred in her evaluation of Dr. Rodrigues's and Dr. Estock's opinions about his absenteeism because although she included in her residual functional capacity assessment the limitation that Mr. Reynolds would miss one day of work per month, "she failed to inquire if missing work as little as once a month would preclude [him] from keeping a job beyond the probationary period." (Doc. 9 at 8).

During the administrative hearing, the vocational expert testified there were jobs Mr. Reynolds could perform based on the ALJ's hypothetical question that incorporated Mr. Reynold's residual functional capacity. (R. at 75–78). Then, the ALJ asked the vocational expert whether the same jobs in the same numbers would still be available if that individual had to miss one day of work per month. (*Id.* at 78). The vocational expert responded, "at one day per month these jobs in my experience, with employers – these positions would still be available at one absence per month." (*Id.*).

Citing *Sczepanski v. Saul*, 946 F.3d 152 (2d Cir. 2020), and *Mosher v. Saul*, 2019 WL 3779995 (N.D. Fla. Aug. 12, 2019), Mr. Reynolds argues that the ALJ was required to examine whether probationary periods exist for the jobs the

vocational expert identified, and if so, whether an employee could miss one day of work month during that time. (Doc. 9 at 8–9). Setting aside that neither *Sczepanski* nor *Mosher* is binding on this court, both cases are factually distinguishable.

In *Sczepanski*, the vocational expert testified that the claimant would not be permitted to miss any days of work during a probationary period. *Sczepanski*, 946 F.3d at 155. Although the claimant's residual functional capacity included "up to one" day's absence from work per month, the ALJ found the claimant could perform jobs in the national economy because ability to work during a probationary period is irrelevant to the disability determination. *Id.* at 155–56. The Second Circuit vacated and remanded because "the ability to complete a probationary period is relevant to a claimant's ability to perform significant numbers of jobs in the national economy at step five." *Id.* at 159, 161.

Similarly, in *Mosher*, the vocational expert testified that a claimant who had to miss one day of work per month would not be able to complete a probationary period for entry-level positions. *Mosher*, 2019 WL 3779995, at *6. Although the ALJ found the claimant would be absent once per month, she found the claimant could work. Id. The district court remanded for further proceedings because "the implication" of the "exchange between the ALJ and [vocational expert]" was that the specific jobs at issue required probationary periods, but the ALJ's decision did not address the impact of the claimant's absenteeism.

Unlike *Sczepanski* and *Mosher*, there is no testimony or evidence indicating that a probationary period exists for the jobs relevant to the determination of whether Mr. Reynolds can work. (*See* r. at 72–80). Rather, the unequivocal testimony from the vocational expert was that Mr. Reynolds could miss one day of work per month and the relevant jobs would still be available. (*Id.* at 78). Therefore, there was no testimony on the issue of absences during a probationary period for which the ALJ was required to account or about which she was bound to inquire.

3.      Hypothetical Question to Vocational Expert

Mr. Reynolds's second argument is that that the ALJ's decision is not supported by substantial evidence because the ALJ's hypothetical question to the vocational expert did not account for Mr. Reynolds's moderate restrictions in concentration, persistence, and pace. (Doc. 9 at 9–11). The court disagrees.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). But the ALJ is "not required to include findings in the hypothetical that the ALJ ha[s] properly rejected as unsupported." *Crawford*, 363 F.3d at 1161; *see also McSwain v. Bowen*, 814 F.2d 617, 619–20 & n.1 (11th Cir. 1987) (holding that the

ALJ did not err in asking a hypothetical question that assumed the only restrictions that the evidence supported and omitted other restrictions).

The Eleventh Circuit has held that an ALJ's hypothetical question must account for a claimant's limitations in concentration, persistence, and pace. *Winschel*, 631 F.3d at 1180–81. An ALJ may do so by explicitly including those limitations in the hypothetical questions to a vocational expert or by "limiting the hypothetical to include only unskilled work" if the "medical evidence demonstrates that [the] claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace." *Id.* at 1180.

In this case, the ALJ explicitly accounted for Mr. Reynolds's limitations in concentration, persistence, and pace. The ALJ asked the vocational expert to assume, among other things, that an individual of Mr. Reynolds's age, education, and work experience: (1) "would be able to maintain attention and concentration for two hour periods at a time;" and (2) "can perform jobs that do not have a fast paced production requirement." (R. at 75–76).

Mr. Reynolds argues that the ALJ's hypothetical is insufficient because the vocational expert testified that if an individual were off task for twenty percent of the work day or absent from work twice a month, the individual could not work. (Doc. 9 at 11; *see also* r. at 78). Mr. Reynolds contends that "these restrictions are more consistent with an individual who has moderate limitations in concentration,

persistence, and pace" than those included in the ALJ's hypothetical question. (Doc. 9 at 11). But Mr. Reynolds cites no evidence in the record indicating that he would be off task for twenty percent of the work day. As for the restriction that he would miss two days of work per month, the only evidence in the record supporting this limitation are Dr. Rodrigues's and Dr. Estock's opinions. (R. at 93, 103). But as explained above, substantial evidence supports the ALJ's decision to reject those opinions. *See supra* pp. 5–11.

Mr. Reynolds has failed to show that he has additional limitations in concentration, persistence, and pace beyond those identified by the ALJ in her hypothetical questions. *See Crawford*, 363 F.3d at 1161. Therefore, the vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision.

### 4.   New Evidence

Mr. Reynolds's third argument is that the Appeals Council erred when it denied review without considering a one-page letter from treating psychiatrist Dr. Giovanni Avila based on a finding that the letter was not chronologically relevant. (Doc. 9 at 11–13).

While his case was pending before the Appeals Council, Mr. Reynolds submitted a letter from Dr. Avila dated June 17, 2021 for the Appeals Council's consideration. (R. at 8). The letter explains that Mr. Reynolds became a patient of Dr. Avila's on March 25, 2021, one day after the ALJ issued her decision. (*Id.* at 8;

*see id.* at 37). The letter states that Mr. Reynolds had been a patient at the medical center where Dr. Avila practices since April 2019 that Mr. Reynolds has been diagnosed with chronic PTSD. (*Id.* at 8). According to Dr. Avila, patients with PTSD have difficulty being in large crowds and handling their emotions and struggle with anxiety, depression, and sleeping at night. (R. at 8).

The letter notes that Mr. Reynolds has been on several different medications for several years, and he has trouble managing his symptoms "to the point where, according to past documentation, [he] finds it hard to hold a job." (*Id.*). Dr. Avila's letter also states that "[a]t this time," Mr. Reynolds "continues to find it difficult to function outside of his home, struggling dealing with others, and [has] continued issues with his mood" and that he is "currently on medication and therapy, but it is still a struggle to go through his daily life." (*Id.*).

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). The Appeals Council must consider evidence that is new, material, and chronologically relevant. *Ingram*, 496 F.3d at 1261. The court reviews *de novo* whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

The Appeals Council stated that the ALJ decided the case through March 24, 2021, and Dr. Avila's June 17, 2021 letter "does not relate to the period at issue," and therefore, "it does not affect the decision about whether" Mr. Reynolds was "disabled beginning on or before" the date of the ALJ's decision. (R. at 2). The Appeals Council did not commit legal error when it refused to consider Dr. Avila's letter because the evidence is not chronologically relevant.

Evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(a)(5). A medical evaluation conducted after the ALJ's decision may be chronologically relevant in certain circumstances. *Washington*, 806 F.3d at 1322–23 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)). For example, in *Washington*, a consultative psychologist provided an opinion regarding a claimant's mental condition. *Id.* at 1319. Although the psychologist examined the claimant several months after the ALJ's decision, the Eleventh Circuit found that the opinion was chronologically relevant because the examiner indicated in his report that he based his opinion on the claimant's reports that "he had experienced hallucinations throughout this life" and on the state of the claimant's cognitive abilities before the ALJ issued a decision. *Id.* at 1322. In addition, the consultative examiner reviewed the claimant's "mental health treatment records from the period before the ALJ's

decision reflecting that [the claimant] repeatedly reported experiencing auditory and visual hallucinations." *Id.*

Dr. Avila's letter is unlike the consultative examiner's report in *Washington*. Dr. Avlia explained that Mr. Reynolds has continued issues associated with his PTSD "at this time." (R. at 8). And although the letter notes that "according to past documentation," Mr. Reynolds has had difficulty keeping a job, the letter does not identify what this "past documentation" is, and without more, this description does not demonstrate that Dr. Avila based his conclusion about Mr. Reynolds's limitations on any medical evidence from the relevant period. Because Dr. Avila's letter "was not chronologically relevant, the Appeals Council was not required to consider it." *See Hargress v. Soc. Sec. Admin., Comm'r*, 888 F.3d 1302, 1310 (11th Cir. 2018).

Even if Dr. Avila's letter were chronologically relevant, remand is not required because the information in the letter is not material. For supplemental evidence to be material, there must be a "reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5). Dr. Avila's letter offers vague conclusions about how Mr. Reynolds's PTSD impacts his daily life, but he cites to no medical evidence to support his opinion. Importantly, Dr. Avila offers no specific job-related limitations, and he does explain how the symptoms identified would preclude work. In short, Dr. Avila's

letter contains no objective medical findings or other evidence that undermines the ALJ's determination based on her review of the medical evidence as a whole.

Because Dr. Avila's June 17, 2021 letter is neither chronologically relevant nor material, the Appeals Council did not commit reversible error by failing to consider the evidence.

5.     Subjective Testimony

Mr. Reynolds's fourth argument is that the ALJ failed to properly evaluate his subjective complaints of symptoms in accordance with the Eleventh Circuit's subjective testimony standard.  (Doc. 9 at 13–16).

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptoms]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). If the ALJ finds a claimant's statements about her symptoms are not credible, the ALJ must "provide[ ] a detailed factual basis for [the] credibility determination," which substantial evidence must support.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 & n.4 (11th Cir. 2005).

During the administrative hearing, Mr. Reynolds testified that he experiences symptoms related to his post-traumatic stress disorder and anxiety, including hallucinations, agoraphobia, hypervigilance, phantom smells, and emotional breakdowns. (R. at 48–49). He explained that certain triggers cause "a complete physical break down" and "uncontrollable crying." (*Id.* at 49). The episodes last from two to seven or eight hours. (*Id.* at 53). Mr. Reynolds testified that while in the military, he witnessed and worked on cases involving homicides and suicides, and crowds and noise trigger his anxiety. (*Id.* at 68–69). Mr. Reynolds testified that he lives with his wife who has to remind him to bathe and take his medication. (R. at 65). Mr. Reynolds does some household chores "[h]ere and there," but his wife does all the cooking and cleaning. (*Id.* at 64–65).

After reviewing Mr. Reynolds's subjective testimony, the ALJ found that Mr. Reynolds's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Mr. Reynolds's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 34). In reaching this conclusion the ALJ noted that treatment records revealed that Mr. Reynolds was hospitalized with suicidal ideations and severe depressive symptoms in late April 2020, but that medical evidence showed his symptoms had improved. (*Id.* at 34; *see also* r. at 352–57, 365, 370, 463, 482, 503,

511–12, 612). The ALJ also explained that other medical records contained reports that Mr. Reynolds was doing better and his symptoms were stable. (*Id.* at 34; *see also id.* at 365, 454, 459, 503). And by October 2020, Mr. Reynolds reported okay sleep and energy, and he had fair or good insight and judgment. (*Id.* at 34; *see also* r. at 611–12).

The ALJ found that Mr. Reynolds's reported ability to pay his bills, count change, handle a savings account, maintain a checkbook, and shop in stores along with largely normal memory and concentration and attention findings in treatment records were inconsistent with Mr. Reynolds's alleged problems with his concentration and memory. (R. at 34; *see also id.* at 257, 309, 318, 377, 504). The ALJ also explained that Ms. Reynolds's wife reported that he follows instructions well and that he has no problems with personal care and grooming. (*Id.* at 34; *see also id.* at 239, 243).

The ALJ considered evidence that both supports and undermines Mr. Reynolds's allegations about the limitations caused by his psychological limitations. (*See* r. at 34). Again, the court cannot reweigh the evidence or substitute its judgment for that of the ALJ, even if the evidence preponderates against the ALJ's finding. *Winschel*, 631 F.3d at 1178; *Crawford,* 363 F.3d at 1158–59.

Mr. Reynolds challenges the ALJ's reliance on his ability to engage in some activities of daily living in evaluating his subjective testimony about the limiting effects of his mental conditions. (Doc. 9 at 15). Although an ALJ may not rely on a claimant's daily activities alone, an ALJ may consider a claimant's daily activities in evaluating subjective testimony.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a factor to consider in evaluating the intensity and persistence of a claimant's symptoms). Here, the ALJ did not deny Mr. Reynolds's claim based solely on his ability to engage in some activities of daily living. She considered those activities in conjunction with other objective medical evidence.

Mr. Reynolds also contends that the ALJ's reliance on medical records indicating that his symptoms had improved and his condition had stabilized was improper because "it is common for psychiatric conditions to wax and wane with treatment but this does not mean that an individual can sustain a job over a period of time as is required for a finding that the individual is not disabled." (Doc. 9 at 16; *see also id.* at 15). The only binding authority that Mr. Reynolds cites in support of this position is the Eleventh Circuit's decision in *Schink v. Commissioner of Social Security*, 935 F.3d 1245 (11th Cir. 2019). (Doc. 9 at 16). *Schink* does not assist Mr. Reynolds.

In *Schink*, the Eleventh Circuit found that the ALJ erred in finding that the claimant's mental impairments of bipolar disorder and mood disorder were non-severe impairments. 935 F.3d at 1268. The Eleventh Circuit explained that individuals with chronic and episodic mental diseases "can experience good and bad days," and treatment notes that reflected the claimant at times was "doing better" did not support the conclusion that the claimant did not suffer from severe mental impairments because there was evidence that the "bad days [were] extremely bad and occur[red] with some frequency." *Id.* at 1267.

In this case, the ALJ found that Mr. Reynolds suffers from severe mental impairments. (R. at 28). Then, in evaluating Mr. Reynolds' subjective complaints, she considered mental health treatment notes that at times conflicted with Mr. Reynolds's testimony about the limiting effects of his mental impairments. (*Id.* at 34). Therefore, *Schink* is distinguishable and does not support the conclusion that the ALJ erred in evaluating Mr. Reynolds subjective testimony.

## V.    CONCLUSION

Substantial evidence supports the ALJ's denial of Mr. Reynolds's application for a period of disability and disability insurance benefits. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

**DONE** and **ORDERED** this January 25, 2023.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE